UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PHILLIP BARRY,

                                        Plaintiff,

                    -against-

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION, UNITED STATES
OF AMERICA,

                                        Defendants.
----------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **MAR 0 7 2012** ★

**BROOKLYN OFFICE**

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-cv-4071 (CBA)

**AMON, United States District Judge**.

## INTRODUCTION

Plaintiff Philip Barry ("Barry"), *pro se*, commenced this suit on September 7, 2010.  Barry asserts claims for libel, tortious interference with contractual obligations, prima facie tort, and obstruction of justice under 18 U.S.C. § 1503.  All claims arise from statements made in a Securities and Exchange Commission ("SEC") press release concerning the SEC's commencement of a civil enforcement action against Barry.  Barry seeks damages and injunctive relief.

Initially, defendants were the SEC, the United States of America, David Rosenfeld, Ken Joseph, and two unnamed SEC employees.  On November 17, 2010, the United States Attorney's Office certified pursuant to 28 U.S.C. § 2679(d) ("The Westfall Act") and 28 C.F.R. § 15.4, that defendants Rosenfeld and Joseph were employees of the SEC and that they were acting within the scope of their employment with respect to the press release. D.E. #7 exh. A.  Accordingly, as required by § 2679(d), the Court deemed Barry's claims against Rosenfeld and Joseph actions against the United States and duly substituted the United States as defendant.

1

By November 21, 2011, no party had identified the Doe defendants. The Court ordered the federal defendants "(a) to ascertain and disclose the identities of any additional employees who assisted in the promulgation and distribution of the subject press release; and (b), if applicable, to certify under 28 U.S.C. § 2679(d) that such individuals were acting within the scope of their employment when they assisted in the promulgation and distribution of the subject press release." D.E. #26.

On December 8, 2011, defendants identified Lee Bickley, Olivia Zach, and Cynthia Matthews, employees in the SEC's New York office, and John Nester, Kevin Callahan, Steve Cohen, and Myron Marlin, employees in the SEC's D.C. headquarters. D.E. #27 exh. A. The U.S Attorney's Office certified that these individuals were employees acting within the scope of their employment with respect to the press release. Accordingly, the Court now substitutes the United States as defendant for all remaining individual defendants.

On April 7, 2011, the SEC and the United States, now the only remaining defendants, brought a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In that motion, defendants appeared to overlook Barry's claims for injunctive relief. The Court ordered supplemental briefing on that issue, which has now been provided. For the reasons stated herein, defendants' motion is granted.

## BACKGROUND

This dispute arises from a press release issued by the SEC on September 8, 2009. The press release, which is annexed to the complaint, relates to the SEC's commencement of a civil en-

2

forcement action against Barry.[1]  The relevant portion of the press release stated that the SEC had

> charged [Barry] for running a $40 million Ponzi scheme in which he promised approximately 800 investors guaranteed high returns from safe, liquid investments, but instead spent their money on real estate, his pornography mail order business, and other interests. Compl. exh. A.

The release later reiterates that the SEC's complaint alleged that Barry "used incoming investor money . . . [to pay] expenses of a separate mail order business that sold pornographic materials."[2] *Id.*

Barry claims that his mail order business did not in fact sell pornography, and that the SEC employees responsible for "promulgation and distribution of the press release" should have known that their statements were "false and defamatory *per se*." *Id.* ¶ 12.  He further asserts that the defendants "maliciously" and "*ultra vires* to their lawful duties" made plaintiff the target of public scorn, interfered with his contractual obligations, generated discord between him and his investors, caused the loss of assets in real property, and "alienate[d] potential defense witnesses" in the pending criminal case against him. *Id.* ¶¶ 15, 18, 20, 22.

Barry requests both damages and injunctive relief. *Id.* at 7-8.  Specifically, Barry seeks $50 million in compensatory damages for himself, another $50 million in compensatory damages on behalf of "the Leverage Group," his former business, and a total of $150 million in treble punitive damages, half of which is to be distributed to the members of the Leverage Group. *Id.*  As for injunctive relief, Barry seeks to compel defendants to retract their alleged libel in a new press

---

[1] Although the complaint in the civil enforcement action is not attached to the complaint here, defendants have provided it with their motion, *see* Kabrawala Decl. exh. A.  The Court takes judicial notice of the allegations contained in the civil enforcement action complaint, without crediting them as true. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (explaining principles of judicial notice); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009).

[2] On September 1, 2009, the United States Attorney's Office for the Eastern District of New York initiated criminal charges against Barry.  On November 17, 2010, a jury returned a guilty verdict on one count of securities fraud and thirty-three counts of mail fraud. Barry was sentenced on June 17, 2011 to twenty years of imprisonment. *United States v. Barry*, No. 09-cr-833 (RJD).

release and to ensure that this retraction is publicized "commensurate with the original libel" by, if necessary, paid advertisement. *Id.*

## DISCUSSION

*I.     Standards of Review Under Fed. R. Civ. P. 12(b)*

Pursuant to Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   In resolving a 12(b)(1) motion at the pleading stage, a court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotations omitted).   "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Id.*

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."   In reviewing a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir. 2000).   The Supreme Court has also made clear that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In *Iqbal*, the Supreme Court suggested a two-pronged approach to applying Rule 12(b)(6). First, the court is to "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Second, having identified the "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S. Ct. at 1949.

The Court now turns to Barry's claims.

## II.    Obstruction of Justice Claims

Barry purports to state a claim under 18 U.S.C. § 1503 for obstruction of justice. Section 1503 is a criminal provision. As defendants argue, this Circuit has held consistently that criminal statutes like § 1503 do not provide private litigants with a cause of action, *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *Burke v. Patchen*, No. 08-cv-639, 2009 WL 2783490, at *2 (D. Conn. 2008), and other Circuits have agreed, *see, e.g., Shaw v. Neece*, 727 F.2d 947, 949 (10th Cir. 1984). Accordingly, the Court grants the defendants' 12(b)(6) motion with respect to Barry's obstruction of justice claims.

## III.    State Tort Claims

Barry next asserts claims for libel, tortious interference with contractual obligations, and prima facie tort.

5

*A. Claims Against the SEC*

Barry's first target for his tort claims is the SEC. The federal defendants argue that a claim does not lie against a federal agency for tort damages.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Accordingly, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Congress affected such a waiver when it enacted the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, which allowed for suits seeking tort damages against the federal government.

Nevertheless, "[t]he FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself." *C.P. Chemical Co. v. United States*, 810 F.2d 34, 37 n.1 (2d Cir. 1987). "Thus, if a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name.'" *F.D.I.C.*, 510 U.S. at 471 (quoting 28 U.S.C. 2679(a)). Courts have routinely held that the SEC is a federal agency within the meaning of the FTCA, 28 U.S.C. § 2671(a), *see, e.g.*, *Sprecher v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983); *Lipkin v. SEC*, 468 F. Supp. 2d 614, 621 (S.D.N.Y. 2006); *Am. Benefits Group, Inc. v. Nat'l Assoc. of Sec. Dealers*, No. 99-cv-4733, 1999 WL 605246, at *4 (S.D.N.Y. 1999), and the claims Barry alleges here—state law torts seeking money damages from the federal government—are precisely the sort cognizable under the FTCA. Because Congress has not rendered the SEC amenable to such claims, this Court is without subject matter jurisdiction and must dismiss Barry's state tort claims against the SEC pursuant to Rule 12(b)(1).

6

*B.  Claims Against the United States*

Barry's complaint also seeks to hold individual employees of the SEC liable for the torts he asserts.  As explained above, the U.S. Attorney's Office certified that all such defendants were acting within the scope of their employment when they prepared the press release at issue.  The United States has been duly substituted for these defendants, who are now dismissed, and Barry's state tort claims against the United States are now claims under the Federal Tort Claims Act.  The federal defendants argue, on two separate grounds, that these claims must be dismissed.

*1.  Administrative Exhaustion*

First, the federal defendants contend that Barry failed to comply with the FTCA's administrative exhaustion requirement.  The Act's exhaustion requirement is set out in 28 U.S.C. § 2675(a).[3]  That provision requires that an FTCA claim be presented to the appropriate federal agency and be denied by that agency before a claimant may institute a suit on the claim in federal court.  The requirement is jurisdictional, *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), and it may not be cured by subsequent exhaustion or amendment of a complaint, *McNeil v. United States*, 508 U.S. 106, 111-113 (1993).

With their motion to dismiss, the federal defendants included a declaration by Kathleen A. Cody, Senior Counsel in the Office of General Counsel at the SEC.  Cody avers that as of December 6, 2010, two months after he filed his complaint, Barry had not yet filed an administrative claim with the Commission. Cody Decl. in Supp. of Mot. to Dismiss, D.E. #20.  Although Barry did eventually file a claim on February 23, 2011, Decl. in Further Supp. of Mot. to Dis-

---

[3] "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2875(a).

miss, D.E. #24, subsequent exhaustion cannot cure a premature complaint.  Accordingly, Barry's

FTCA claims are dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

*2. Intentional Torts Exclusion*

Defendants argue that even if Barry's claims were exhausted, the federal government has not

consented to be sued for libel or tortious interference with contract.  It further argues that Barry's

prima facie tort claim is derivative of his other tort claims and thus should be barred for the same

reason.

The FTCA rendered the federal government amenable to certain claims, but it carved others

out of the Act's coverage.  28 U.S.C. § 2680(h),[4] sometimes referred to as the "intentional torts

exclusion," makes clear that § 1346(b)'s grant of subject matter jurisdiction "shall not apply

to . . . any claim arising out of . . . libel . . . or interference with contract rights."  *See B & A Ma-*

*rine Co., Inc. v. Am. Foreign Shipping Co., Inc.*, 23 F.3d 709, 714-15 (2d Cir. 1994); *Tomaino v.*

*United States*, 2010 WL 1005896, at *4 (E.D.N.Y. 2010).  Barry's libel and tortious interference

with contractual obligation claims must therefore be dismissed.

Although Barry's prima facie tort claim is not listed by name in § 2680, it is likewise exclud-

ed.  "In determining the applicability of the § 2680(h) exception, a court must look not to the

theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which

he asserts." *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976).  Barry's prima facie

tort claim seeks to establish liability for exactly the same conduct and injury as his other two tort

claims.  All three state tort claims against the United States are therefore dismissed.[5]

---

[4] "The provisions of this chapter and section 1346(b) of this title shall not apply to— . . . (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680.

[5] That Barry's claims fail under § 2680(h) does not mean that they are not "cognizable" for purposes of § 1346(b). *See Mill Creek Group, Inc. v. F.D.I.C.*, 136 F. Supp. 2d 36, 45-46 (D. Conn. 2001).  Accordingly, even though the FTCA does not ultimately provide a claim, any claim against the SEC is still dismissed.

*IV.    Claims for Injunctive Relief*

In the *ad damnum* clause of his complaint, Barry requests injunctive relief requiring the SEC to print a retraction of the press release, to ensure that the retraction is publicized as widely as the original press release, and to bear any cost of this publicity. When combined with the allegation that the press release was "*ultra vires* to [defendants'] lawful duties," this merits consideration of whether Barry states a claim under the Administrative Procedures Act ("APA"), 5. U.S.C. §§ 701 *et seq*.

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Barry's claim does not arise under a specific substantive statute, so he may only challenge the press release if it is "final agency action." *See generally Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'").

Pursuant to the statutory definitions applicable to the APA, "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551. An agency action is final if two conditions are satisfied: "First, the action must mark the 'consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Defendants argue that the press release at issue in this case is neither "agency action" nor "final." There is little case law directly on point, and none holding that a press release like the one

9

in this case is "agency action."  In a case from 1948, *Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948), the D.C. Circuit held explicitly that an allegedly defamatory publication by the FCC was not "agency action."  As Barry points out, however, the D.C. Circuit has questioned *Hearst*'s "absolute immunity rule," suggesting that, in appropriate circumstances, agency publicity may be subject to judicial review. *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1118 (D.C. Cir. 1988); *see Trudeau v. FTC*, 456 F.3d 178, 189 (D.C. Cir. 2006); *Impro Prods., Inc. v. Block*, 722 F.2d 845, 849 (D.C. Cir. 1983).

Of the categories enumerated in the definition of "agency action," "sanction" appears to be the only one potentially applicable to the press release at issue here.  Under § 551(10),

> "sanction" includes the whole or a part of an agency—
>
> > (A) prohibition, requirement, limitation, or other condition affecting the freedom of a person;
> >
> > (B) withholding of relief;
> >
> > (C) imposition of penalty or fine;
> >
> > (D) destruction, taking, seizure, or withholding of property;
> >
> > (E) assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees;
> >
> > (F) requirement, revocation, or suspension of a license; or
> >
> > (G) taking other compulsory or restrictive action.

But this definition—which appears to contemplate some direct and tangible effect on Barry's liberty, property, or conduct—does not appear to embrace the press release here.

Even if the Court were to accept the D.C. Circuit's suggestion in *Industrial Safety Equipment Ass'n, Inc. v. EPA*, 837 F.2d at 116, that "an agency intent on penalizing a party through adverse publicity, especially false or unauthorized publicity, might well merit a review of its action," the

10

Court seriously doubts that the publicity alleged in this case would qualify. To begin with, the press release at issue did not cause "destruction of property," "revocation . . . of a license," or any other result analogous to those included in the definition of "sanction," so this is not the "compelling" case imagined in *Industrial Safety Equipment. See* 837 F.2d at 116.

Moreover, the two references to the mail-order pornography business are included with far more significant allegations of fraud, none of which Barry claims is false. The press release merely echoes the sixteen-page civil enforcement action complaint, which alleges that Barry operated a Ponzi scheme for over twenty years, bilking investors out of millions of dollars.[6] In both the complaint and the press release, the ancillary allegations concerning the mail-order pornography business are hardly prominent. And nothing in Barry's complaint suggests a motive for the SEC to sprinkle a knowingly false allegation of a mail-order pornography business in with allegations of far more serious—indeed criminal—conduct. This renders implausible the conclusion that the press release's purpose was to penalize Barry.

In any event, the press release fails for an independent reason: it is not "final" agency action under *Bennet.* Neither *Hearst* nor the D.C. Circuit cases questioning its vitality addressed the finality requirement. There is, however, an unpublished Ninth Circuit case, *Public Utility Dist. No. 1. v. Bonneville Power Admin,* 250 F. App'x 821, 823 (9th Cir. 2007), that has addressed this question. That case concerned a challenge to a press release that reported on a decision made by the Bonneville Power Administration ("BPA"), a federal agency, to implement a certain penalty. *Id.* The Court held that the press release itself was not "final" under *Bennett. Id.* As in *Bonneville,* the Court here finds that no rights or obligations were determined by the press release, and that the legal consequences faced by Barry flowed not from the press release, but from the dispo-

---

[6] Notably, Barry signed a consent decree in the civil enforcement action in which he neither admitted *nor denied* the allegations contained in the civil enforcement complaint. Kabrawala Decl., D.E. #32, exh. B ¶ 2.

11

sition of the civil enforcement action about which the press release reports. *See Bennett*, 520 U.S. at 177-78. The press release is therefore not "final" action subject to review under the APA.

Accordingly, defendants' motion to dismiss the APA claim is granted.

V.      *Motion to Amend the Complaint*

Barry also requests leave to amend his complaint to include the "libelous reference . . . which appeared inter alia in the S.E.C. enforcement complaint" as an additional cause of action. Under Fed. R. Civ. P. 15(a), leave to amend should be denied "only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005) (internal quotation marks omitted).

Barry's proposed amendment would be futile. To the extent he seeks to assert a state tort claim for damages, that claim is foreclosed for the reasons explained in Part III. To the extent he seeks some unspecified relief for the allegedly false statement made by the SEC in the complaint in the civil enforcement proceeding in which he entered a consent judgment, the Court is not aware of a legal theory (and Barry has advanced none) upon which he could state a claim.

Barry's only arguable challenge would fall under the APA. But the allegation complained of likely lacks the binding legal effect required to be final agency action. *Cf. FTC v. Standard Oil Co. of Ca.*, 449 U.S. 232, 239-43 (1980) (administrative complaint not "final agency action" because it had "no legal or practical effect, except to impose . . . the burden of responding to the charges"); *Ukiah Valley Med. Center v. FTC*, 911 F.2d 261 (9th Cir. 1990) (same). Moreover, even if the claim was arguably cognizable under the APA, "in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view, or under any circumstances, they are pertinent to the litigation." *Lipin v. National Union Fire Ins. Co.*, 202

12

F. Supp. 126, 137 (S.D.N.Y. 2002).  The mail-order pornography allegation was clearly pertinent to the civil enforcement litigation since it pertained to the destination of the fraudulently obtained funds. Lastly, Barry agreed to a consent decree in the civil enforcement action in which he stipulated "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." Kabrawala Decl., D.E. #32, exh. B ¶ 13.  Accordingly, leave to amend is denied.

### CONCLUSION

For the forgoing reasons, defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) is GRANTED.  Barry's motion for leave to amend is DENIED.  The Clerk of Court is ordered to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, N.Y.
    March 7, 2012

                                        /S/
                                        _____
                                        Carol Bagley Amon
                                        United States District Judge

13